## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL EYRE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR** |
| ALBANY MOLECULAR RESEARCH INC., THOMAS E. D'AMBRA, PH.D, WILLIAM S. MARTH, DAVID H. DEMING, GERARDO GUTIÉRREZ FUENTES, KENNETH P. HAGEN, ANTHONY J. MADDALUNA, FERNANDO NAPOLITANO, AND KEVIN O'CONNOR, | ) ) ) ) ) ) ) ) ) | **VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Michael Eyre ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Albany Molecular Research, Inc., ("Albany" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Albany, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Albany and affiliates of The Carlyle Group ("Carlyle") and affiliates of GTCR

LLC ("GTCR").

2.      On June 5, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which each share of common stock of Albany will be converted into the right to receive $21.75 in cash (the "Merger Consideration").

3.      On July 3, 2017, in order to convince Albany stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose certain material information that is necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote, so that they can properly exercise their corporate suffrage rights.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.  Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Albany stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the

Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) Albany is incorporated in this District.

## PARTIES

10.      Plaintiff is, and at all relevant times has been, an Albany stockholder.

11.      Defendant Albany is incorporated in Delaware and maintains its principal executive offices at 26 Corporate Circle, Albany, New York 12203. Albany is listed on the NASDAQ and trades under the ticker symbol "AMRI".

12.      Individual Defendant Thomas E. D'Ambra, Ph.D. ("D'Ambra") is a co-founder of the Company and has served as Chairman of the Board of Directors since January 2014.

13.      Individual Defendant William S. Marth ("Marth") has served as a director since May 2012.

14.      Individual Defendant David H. Deming ("Deming") has served as a director since

February 2016.

15.    Individual Defendant Gerardo Gutiérrez Fuentes ("Fuentes") has served as a director since July 2015.

16.    Individual Defendant Kenneth P. Hagen ("Hagen") has served as a director since February 2016.

17.    Individual Defendant Anthony J. Maddaluna ("Maddaluna") has served as a director since February 2016.

18.    Individual Defendant Fernando Napolitano ("Napolitano") has served as a director since July 2016.

19.    Individual Defendant Kevin O'Connor ("O'Connor") has served as a director since March 2000.

20.    The Board and Albany may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Albany (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As

of June 5, 2017, there were approximately 42,959,065 shares of Albany common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Albany will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

ii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

      f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

      g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.  The Proposed Merger

23.    Albany is a contract research and manufacturing company that provides drug discovery, development, and manufacturing services. The Company operates through four segments: Discovery and Development Services (DDS), Active Pharmaceutical Ingredients (API), Drug Product (DP) and Fine Chemicals (FC). The Company supplies a range of services and technologies supporting the discovery and development of pharmaceutical products, the manufacturing of API and drug product for new and generic drugs, as well as research, development and manufacturing for the agrochemical and other industries.[1]

24.    On June 6, 2017, the Company announced the Proposed Merger in a press release which states the following, in relevant part:

> ALBANY, N.Y., June 6, 2017 /PRNewswire/ -- Albany Molecular Research, Inc. (NASDAQ:AMRI), a global contract research, development and manufacturing organization working with the life sciences industry to improve patient outcomes and quality of life for more than 25 years, today announced it has signed a definitive agreement to be acquired by affiliates of The Carlyle Group ("Carlyle") and GTCR LLC (""GTCR") for $21.75 per share in cash.
>
> This represents a 42% premium to the 60-day weighted average closing stock price leading up to April 5, 2017 (the last trading day prior to public rumors in the press

---

[1]    http://www.reuters.com/finance/stocks/companyProfile?symbol=AMRI.O.

regarding a potential sale process).

The agreement was unanimously approved by AMRI's Board of Directors which has recommended that the shareholders vote in favor of the transaction.

William S. Marth, President and CEO of AMRI, said, "This transaction is a strong endorsement of our strategy. Given their deep healthcare industry expertise and financial resources, Carlyle and GTCR are highly attractive partners for us and offer a compelling opportunity to accelerate our growth and enhance delivery of world-class solutions to our customers."

"We strongly believe in AMRI's strategic direction and have been very impressed with management's ability to transform the business into a trusted partner for the biopharma industry," said Dean Mihas, Managing Director and head of the Healthcare group for GTCR. "We believe AMRI is uniquely positioned to capitalize on an increased trend for outsourcing of pharmaceutical products and services and look forward to partnering with the AMRI team to achieve its strategic objectives and drive value for all of AMRI's stakeholders."

Commenting on the transaction, Stephen H. Wise, Managing Director and Global Head of Healthcare for Carlyle, said, "AMRI has a strong track record of delivering world-class solutions to the global biopharmaceutical industry, and we are excited to help the Company create long-term value through targeted growth and superior customer service. We see great potential and talent within the organization, and are eager to partner with AMRI to strengthen and build upon its existing set of products and services."

Closing of the transaction is subject to customary closing conditions, including, among others, the affirmative vote in favor of the transaction by holders of a majority of AMRI's outstanding common stock and the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and similar laws outside the U.S. It is anticipated that the special meeting of AMRI's stockholders to vote on the transaction will be held in the third quarter of 2017, and, if the transaction is approved, the merger would be expected to close shortly thereafter.

## II.    The Merger Consideration Appears Inadequate in Light of Albany's Recent Financial Performance and Growth Prospects

25.    The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. Indeed, for the full fiscal year 2016, the Company reported total revenue of $570.5 million, up 42% from 2015. Commenting on the year-end results, Individual Defendant Marth stated: "We believe we are well-positioned to capture

significant business as more companies outsource their contract research, testing and manufacturing services."

26.    The Company's success has continued into the current fiscal year. For the first quarter ended March 31, 2017, the Company reported total revenue of $163.8 million, up 55% from 2016.

27.    Thus, it appears that Albany Molecular is well-positioned for financial growth and that the Merger Consideration fails to adequately compensate the Company's stockholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's stockholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether to vote in favor of the Proposed Merger.

## III.    The Materially Incomplete and Misleading Proxy

28.    On July 3, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's stockholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.    The Proxy fails to provide material information concerning the Company's financial projections, which were relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction.  Proxy, 46-47, 56-57.  The financial projections were also relied upon by the Company's financial advisor, Credit Suisse (USA) LLC ("Credit Suisse"),

in rendering its fairness opinion, as Credit Suisse utilized the values of the unlevered free cash flows provided by Albany's management in conducting its Discounted Cash Flow Analysis. Proxy, 54.

30.    Specifically, the Proxy provides non-GAAP (generally accepted accounting principles) projections for Adjusted EBIT, Adjusted EBITDA, and unlevered free cash flows ("UFCF"), but fails to (i) provide line item projections for the metrics used to calculate these non-GAAP measures and (ii) reconcile the non-GAAP projections to the most comparable GAAP measures. The Proxy also fails to define Adjusted EBIT and Adjusted EBITDA.

31.    With respect to UFCF, the definition incorporates the undefined and unreconciled metric of Adjusted EBITDA.  Proxy, 57. ("[UFCF] is the Adjusted EBITDA less stock-based compensation, less taxes, plus/minus the change in net working capital and less capital expenditures.")  However, the Proxy fails to provide the line items underlying the value of UFCF: (i) stock-based compensation, (ii) taxes, (iii) net working capital, and (iv) capital expenditures. Proxy, 57.

32.    With respect to Adjusted EBIT, the Proxy states that the values provided for Adjusted EBIT exclude "share-based compensation," yet fails to specify whether the "share-based compensation" referenced in the financial projections is equivalent to the "stock-based compensation" referenced in the definition of UFCF.  Proxy, 54, 57.

33.    If a proxy discloses financial projections, those projections must be complete and accurate.  Similarly, when a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

34.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with stockholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Albany included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

35.    Last year, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released

---

[2]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

36.    In order to make the projections for Albany included on page 57 of the Proxy materially complete and not misleading, Defendants must provide (i) definitions for Adjusted EBITDA and Adjusted EBIT and (ii) a reconciliation table of non-GAAP measures Adjusted EBIT, Adjusted EBITDA and UFCF to the most comparable GAAP measures.  At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, the Defendants acknowledge that disclosing non-GAAP projections may mislead stockholders in the Proxy: "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information prepared in accordance with GAAP." Proxy, 57.

37.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholders meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

---

[4]    *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*."  17 C.F.R. § 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and

a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

42.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

43.     Defendants have issued the Proxy with the intention of soliciting stockholders support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

46.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy

13

identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48.     Albany is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

49.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

50.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

52.      The Individual Defendants acted as controlling persons of Albany within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Albany, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

55.      In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their

input on the content of those descriptions.

56.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

58.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 11, 2017                    **FARUQI & FARUQI, LLP**

**OF COUNSEL:**                          By: _/s/ Michael Van Gorder_____
                                         Michael Van Gorder (#6214)
**FARUQI & FARUQI, LLP**                 20 Montchanin Road, Suite 145
Nadeem Faruqi                            Wilmington, DE 19807
James M. Wilson, Jr.                     Tel.: (302) 482-3182
685 Third Ave., 26th Fl.                 Email: mvangorder@faruqilaw.com
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com             *Counsel for Plaintiff*
Email: jwilson@faruqilaw.com


*Counsel for Plaintiff*